Today, Alexander v. Servisair, L.L.C. Mr. Robinson. Thank you, Your Honor. I am Terrence Robinson here for Servisair, the defendant in this case. May it please the Court, Counsel. Ms. Alexander was terminated after having applied for FMLA leave, and while she was out on a period where the employer, Servisair, considered her to be on a no-call, no-show. She had not called him for three days at that point when she was terminated. Defendant's contention throughout this case has been, and through the litigation process and through trial, was that Ms. Alexander was not terminated either for applying for leave under the FMLA, for taking leave, or for seeking restoration of her job following FMLA leave, or that they interfered. Our position has always been that they had not interfered with her wrongfully while she was on FMLA leave. Our contention had always been, and has been throughout the trial of this case, that she was terminated because she violated Servisair's no-call, no-show policy. Wasn't there some ambiguity or uncertainty about whether that policy applied once an employee has made a claim for leave under the FMLA? I don't believe that there was really any ambiguity other than in the district court's mind. I think that the jury had an opportunity to review the policy and understood. The policy on its face states you have to call in every day even while you're on FMLA application process. Once you're approved for FMLA, then you call in every 30 days. From the witness stand, the plaintiff acknowledged that, in fact, this policy was the case. This was so. This plaintiff was not someone who was not familiar with the policy or that would be thrown off by some ambiguity in the policy because she, for a long period of time during her employment, was, in fact, the person responsible for dealing with FMLA violations, or excuse me, FMLA applications. Counsel, what was in the jury instructions that would have pointed out to the jury how to analyze the point you're just making, which is if she did not call in regularly, she was in violation and could be terminated. Was the jury told anything about that in their instructions? Unfortunately, no. The jury was not given any instruction with respect to how to handle a policy violation. I understand the argument you briefed, how that came up after the jury note came out, but you would say that insofar as instructions they actually got, nothing in there relied on or gave direction to jurors about the effect of her failing to call in. No, Your Honor. There was not anything in there. Do you have any law, you have cited some cases, and with respect, I don't know if they are quite on point, that this sort of call-in obligation can be used by the employer to terminate despite the request for FMLA leave? Do you have any case on point that would support that this really is a proper alternative basis for the termination? There are a number of cases, Your Honor, that state that if an employer has a ballot policy wherein they require that an employee follow absentee policies during FMLA or FMLA leave period, that termination for that violation of that policy would not be considered a violation of the FMLA. There are a number of cases on that. There are no cases out of the Fifth Circuit, but there are actually cases out of the district court within this jurisdiction as well as out of the Northern District. There are cases out of the Tenth Circuit on that issue. Those cases were presented to the court prior to the trial of this case as well as at the charge conference. We discussed those cases. The court refused to accept those cases during the trial because she said they were not Fifth Circuit cases. Well, what was her status under the FMLA insofar? She had made a request, but insofar as FMLA itself would have indicated or the policies of the company, had she yet been granted FMLA leave? If so, when did that occur? Just sort of explain to me the operation in this case of the FMLA for that week period between when she first requested it and she was terminated. Okay, so she left sick, let's say, on May 11th or May 9th. On the 10th, the 11th, and 12th, she called in sick. The testimony from the witnesses were, at least for the defendant, that they were not aware that she was applying for FMLA at that point. She did, in fact, apply for FMLA on the 12th, and that's a Friday. Applied for it in what way? She applied through a third party. Service Air has a third party company that handles all of their FMLA claims. Once she called and applied to them, they're supposed to give Service Air a notice that a person has actually applied. Unfortunately, the notice was not received by Service Air management because, unfortunately, she had been the person designated to receive that notice through her email. So Service Air did not receive the notice and was not aware that she had actually applied. She was not actually approved for FMLA until sometime, I believe, it would have been in June. But there was a period there where she was still, she was in application from May 12th to, I believe, it's June 12th or 13th when she was actually retroactively, she was retroactively approved back to the earlier date. Well, what could the jury, excuse me, finish your answer. She had already been terminated at that point. What could the jury then have been relying on when it found that the company had interfered with their FML rights? What interference was there other than her termination? Your Honor, I don't believe there was any interference other than termination, but the jury instructions were stated in such a way that they couldn't find anything other than interference. There was no room for them to find anything else. So they found interference, and then as a result, they said, well, you violated, apparently, the FMLA based upon the instruction, but we don't believe that you caused the damage to the plaintiff. And I know that because in the damage instruction, that is a requirement. There's no strict liability under the FMLA for interference. So when the jury got to that part, then they looked at it and said, okay, we've got a first fine that is there a violation, then we've got to determine whether or not the defendant caused the damages that the plaintiff suffered, if any, and then we determine an amount if necessary. And the jury at that point stated $1 in damages, nominal damage award. And I believe that's appropriate, and I believe this court has done that in a number of cases where there is a violation of a policy or statute or a constitution, just to acknowledge that violation and then to award nominal damages because the plaintiff has failed to prove what's necessary to actually get damages in that case. And that's what happened here. By following the damage instruction, the jury decided that this is what they wanted to do. This is the case where the jury came up with some random number. They didn't order $8,672. They ordered her $1. In the cases at the court sites, there was some random number assigned by a jury, and the jury had no basis for that finding. Well, they weren't trying to make a calculation in this case. They were trying to make a statement based upon what they believed was the appropriate law, and that was to give $1 in damages. And I believe they acknowledged that, in fact, pursuant to the instruction that they had, that a violation of the statute had occurred. But the plaintiff did not show causation. The intervening issues were the plaintiff's violation of the policy. So the intervening cause was the plaintiff's violation of the policy. There was evidence put on during the trial that there are a number of reasons why the plaintiff was terminated other than because she filed for FMLA. And the jury had ample evidence. What evidence was that? You're talking about the jury heard about this failure to call in? Yes. The jury was informed about the failure to call in. The jury was informed about the employee's policy during the trial that required her to call in. So it wasn't as though they weren't aware of it. It's just that they didn't know where to put it when they got back into the deliberations. They were fully informed. In fact, they were told that while the plaintiff was applying for FMLA and out on that pending period, she was looking for a job. They were told that prior to her leaving work on that sick time, she had informed her supervisor that she was going to look for another job. They had the sense that this plaintiff probably did not want this job at that point. We showed her calendar where she showed that she went on interviews while she was out on FMLA. I mean, there was ample reason for them to believe that the plaintiff was responsible for her loss, not the defendant in this case. So they had the policy. They had her abandonment of the job, her intention to abandon the job as a basis for believing the defendant was not responsible for it. They also knew the defendant was not aware that the plaintiff had actually filed for FMLA. All that was put before the jury. And the jury had that as a basis for making its determination. Counsel, let me ask you about this jury instruction. You do make it an issue in your appeal. It at times seems to be tied to the jury note. Are you raising as an issue not just the refusal? But let me ask you this. What is your—identify the issue for me that you're raising about the jury instructions. Well, with respect to the jury instruction, we requested that the court add a number of instructions and questions related specifically to an employer's right to terminate an employee while they were seeking FMLA. And when did you make that argument in the district court? When the jury note came out? No, Your Honor. We actually made that argument when we submitted the written instructions, our proposed instructions. Also, we made that argument in the jury charge conference that occurred right before the charge was given to the jury. So you're saying that issue is preserved? It is preserved, Your Honor. My understanding of what Judge Gilmour said, and it may be just from your opposing counsel's brief, I don't know where I saw it. She said this is sixty pages, ninety pages, whatever, jury instructions. This is . . . I just can't work with this. I think she said something more pejorative than that and denied them. If you overwhelm the judge with instructions that are basically off point and otherwise, I'm not sure she's supposed to find the one gem in there that's particularly relevant. Am I factually incorrect about what happened or sort of respond to my observation? Well, factually, the judge stated early on, you've got too many instructions. I don't want to deal with these instructions. This is unnecessary. However, at the charge conference, the judge made basically the same statement but allowed us to make objections to the charge that she was presenting to the jury. At that time, and it starts in the record of 1516 of the court's record, we started to present our objections. First, the plaintiff presented their objections and then we presented our objections. During that time, I informed the court, while you're not going to let me discuss all these instructions that I've asked for, at least let me discuss the ones that I think are really important because I really think that this jury needs to have this based upon the testimony that's been provided. I made that presentation to the court at that time and I specifically stated that I needed a jury instruction on policy. If there's a policy in place that says you can be terminated while you're on FMLA, the plaintiff needs to follow it. I asked for that instruction. I asked for a number of instructions in that section, Your Honor, all of which were denied. Of course, I also raised this issue yet again when the jury sent back a question. While the question wasn't directly on point to what my issue was, I don't believe the question would have ever occurred had they had the instruction about the policy because they were basically asking, can an employee be fired while they're pending approval for FMLA? Well, according to the case law and according to the instructions that we tried to present to the jury, they can. However, the court even at that point said, no, I'm not going to do that. They just directed the jurors back to the original questions that had been presented to the jury. Now, the jury said yes on interference, question number one. The jury said no to retaliation on question number two. Now, understand question number one on interference, it just states whether or not the defendant denied, restrained, or interfered with the right to FMLA. And there's nothing there that would indicate what you're supposed to do after that except for when you go to, because we didn't have the instructions that we asked for, but when you go to the damage instruction, the damage instruction states you have to find, if there's a violation, then you have to find whether we caused injury, if any. And that's where the jury stopped and they said, okay, we don't believe the defendant caused injury and therefore we're going to award $1 for the violation and move forward. And the court improperly added all of the damages that the plaintiff had asked for after the jury had already rendered its verdict. I believe that's improper pursuant to the Constitution and I believe there was ample evidence for the jury to make the finding that it actually made in this case. Additionally, Your Honor, just since I have a minute left, there was also an award of attorney's fees. And I believe the case of Farragher v. Hobby makes it clear that while technically the plaintiff would have been a prevailing party in this case, the reality is there's no basis for reasonable attorney's fees of $90,000 in a case where the jury awarded $1. You're not contesting the amount of the fees, as I understand it, but only the fact of the fees. Well, I'm contesting the amount of the fees in terms of not only should they not have awarded any fees based upon, I believe, Farragher v. Hobby, but the court didn't proportion the fee award at all based upon we had three pieces to this claim. We had interference, we had retaliation, and we had an FMLA exemption claim. The court gave all the attorney's fees as though they were all applicable to this one interference piece. And on the interference piece, the jury only awarded $1. There's just no reasonable basis for going through the analysis of an hourly attorney fee award as you would normally do in another case, and I believe that's borne out in the Supreme Court's case on Farragher v. Hobby. All right, thank you. You've saved time for a bubble, Mr. Robinson. Is it Santier or Santire? You can correct me. Santier. Santier, all right. Big time change from the Greek. The Greek names are difficult. Good morning, Your Honors. I'm Stanley Santier on behalf of Pelley, plaintiff, and I'm joined by my co-counsel. I say that because he's going to take a few minutes at the end. We actually have allocated 10 and 10. If it would be okay, we'll make it 15 and 5. Yes, that's fine. Thank you, Your Honors. May it please the court, I'd like to lay out, first of all, one of the things that bewilders me about this appeal is that most of the brief, in this case filed by appellant, is re-arguing the exact points that were raised in the trial and they were actually facts issues. I'm just going to pick out some examples. Was there a policy? That was put before the jury, and they determined that there were. . . In fact, if you look in the record, the court, the trial court, at actually two different points, turned to the witnesses that they were presenting and said, where is this policy? Show it to me. One of the witnesses said explicitly, well, I really don't know where it is. Well, we theorized, and this is purely theory, because it wasn't in the record, there was no policy, this is a very large company. Swiss Air is a very, very large Swiss company. They bought a French company a few years ago called Service Air. They have unions in different places. They have collective bargaining agreements, and some of those do have such a policy. There was no policy presented for the jury that said you had to call in every day. Let me ask you what you mean by that. Did somebody testify there was such a policy, but no one could produce a writing, or just to what extent was the policy testified as being in existence in some form? What evidence was there? They did, Your Honor, that's a good point. They did frequently say the policy was this, What did the plaintiff say? Did she say she knew of that policy? She said there was no such policy, Your Honor. She knew of no policy. But the bottom line is that it's interesting that the fact scenario in this case, as you see in the record, began May 11th and went through May 18th, everything that transpires during that period of time. She called in the first day on May 11th. They say she called in to the phone number that was actually designated for FMLA, but that was her phone. It's sort of circular reasoning. If she's not there, no, she's not going to pick it up. And it was brought out in testimony that that number was known as being the FMLA number. Everyone had access to it. The next day, she called from her physician's office. There's another interesting dispute on the facts in the case, because if you go through the brief, their brief, they act like someone called her while she was at the physician's office. It was on her cell phone. And she says, I'm going into my office. I mean, I'm going to the doctor. Can't talk to you. Click. That's not what was in the testimony. In the testimony, she specifically said that they called her. She said, I'm in the physician's office. I'm applying for FMLA, and I've got to go in there. My appointment is starting. All of these are disputed elements of evidence, facts. And in fact, that really goes to the heart of what this case is really about. And that's this issue of $1. The appellant relies heavily on the Dimmick case, Seventh Amendment. This is not a Dimmick case. It's not a Seventh Amendment case. Every case that you look at out of the Fifth Circuit, whether it is the Moreau case, whether it is the Taylor v. Green case, whatever case, always makes the statement that additive is not applicable when you have a dispute over the measure of damages. And there's the heart of the case. When Mr. Patru was going through his direct on his witnesses, insofar as the measure of damages, he put up a large amount of evidence, including a letter that was given to Ms. Alexander when she first went to work. It said that she was going to be paid $53,000 on an annual basis. He provided that. He provided stubs. He provided all sorts of information as to a measure of damages. There was not a single objection to that evidence. When they did cross-examination, they didn't ask a single question on that evidence. When they did their direct testimony with their folks, they didn't ask or elicit a single bit of information. All the jury had was the measure of damages produced by the plaintiff, which was very well documented. And in fact, the plaintiff went beyond simply showing that she'd lost income over a period of time. She fulfilled one of the obligations, really, that is defense. She brought out the mitigation. She said, I couldn't find work for this period of time, but there were certain periods of time that I went to work on temp through the Robert Half Agency. So whereas the damages would have been $57,000, we threw in the $20,000 in mitigation, brought it down to $37,000. Now, one of the issues also, and this is something that I find peculiar, they referred to it here again in the presentation, and they have it in their brief, they keep talking about causation. First of all, causation, this is not a case involving causation. But causation was in the instructions, wasn't it? No. I don't remember causation being in the instructions. Mr. Robertson just told me it was. Well, let me put the nexus, really, to the degree... Causation is usually a negligence case. One of the interesting things about FMLA and the relationship between whether or not, you know, what the measure of damage is going to be, one of the interesting things about FMLA, it is almost in biblical terms. Shall, shall, shall. The employer shall be liable if the employer interferes with FMLA. The jury said that they did interfere. They said that they didn't discharge her because of the FMLA, but they interfered with the FMLA. So then you automatically in the statute go to the second shall. The employer shall be liable for the lost income. That's what it's in the statute like that. So it's a very specific, established statutory measure of the damages. If I recall the quote in one of your briefs, that same statute closes with loss of income caused by the violation. Caused by the violation. And that's the damage instruction given by the judge was if you find the defendant violated FMLA, you must determine whether the defendant has caused plaintiff's damages. So the jury was supposed to meditate on that, whether you think it's exactly correct or not. And the jury had all this other information that Mr. Robinson has talked about. They were thinking something back there. They didn't jive with the FMLA violation causing the loss of income. Let me ask you this as a legal point, because I have looked at the cases in your opposing counsel's brief, and they don't seem as strong as he was indicating. Probably I need to look at them again. What would you say the law is, if in fact there were such a policy at this company, and she violated it during this week's time, would terminating her on that basis, if that's what the jury found, which we can't say they did, but if they had, is that supported by case law or by your interpretation of FMLA? Is that alternative reason, even if, and I'm not sure what the interference would be, but if that is why they fired her, would they have had the right to do so? There's no doubt, Your Honor, yes. There are cases where if there's a violation of policy and the company acted appropriately under that policy, that in fact the company could be justified and that she would have failed to meet her responsibility if she had not acted properly. You requested FMLA leave. It's not been approved yet. If she violated policy in the interim, was terminated for that basis, the case law would support that if it factually was sustained. That's a good point. If in fact, but there's two things I believe in the question that you asked. One, was there a policy? That was a question of fact, whether or not there was a policy. They were asked, where is the policy? They couldn't show it. She testified there was no such policy. There was actually one of their folks, no longer worked for them by the name of Ms. Achevedo, who said there was no such policy. So that was something that was different even amongst the folks. There was disputed and there was evidence to support that there was such a policy, correct? There was no evidence except the verbal statement. It was written, but there was testimony. There was testimony, yes, Your Honor. There was verbal testimony on that. But of course, that actually comes down to, doesn't it, the question of the fact that it's a question of fact, whether or not in fact there was such a policy. And the jury was never asked to decide that one way or the other. It was inherent in the decision that they made, yes, Your Honor. It was inherent in the decision that they made whether or not there was interference with her FMLA. I would also point out, and I don't have the cases with me, but I know there are some cases that point out that in such a short period of time... In the first place, she did call the first day. She called in. It was in the second day that she was in the physician's office. Now, you also have to picture that their process in this company is to refer everything to the Reed Group, and there's no doubt the Reed Group got their medical evidence, got the medical documentation, and the Reed Group was sending this information into the company. Now, the issue comes up, you know, why did they act as they did? I really can't respond to that. I don't know why they did, in such a short period of time, why they made that decision. And that was a contentious issue, of course, during the testimony. Isn't one way to look at this verdict is that it's irreconcilable? The judge decided she could reconcile it, but isn't it in fact irreconcilable for the reasons that we're talking about here? And if we're going to rely on jury fact findings, they find on the one hand, and on the other, and the two just can't match. Your Honor, there is a... You know, five years before the Demick case was decided, as I recall, maybe it's from law school, Justice Hughes made this famous statement in the versus... What was it? Heron versus Southern Pacific. In that case, Justice Hughes made the statement that the jury must follow the law. Now, if the jury followed the law, and it was inherent in the instructions, they had no other measure of damages other than what was laid out by the plaintiff in the case. Insofar as the dollar, what does that say? I don't know what it says. It would be speculation on my part, and they weren't supposed to speculate. I guess they did. Why a dollar? Why not two cents? Why not a million dollars? Forgive me, that's... You're starting with the accepted part is that there was interference, and so therefore the irreconcilable and therefore flawed one is the dollar. But if you look at it the other way, the dollar, which is essentially... I've seen the distinction, zero versus a dollar, but the jury didn't have any guidance on that. They were essentially saying, it seems to me, the company caused her no damage. So if you take that as the controlling and work backwards, then the incorrect one is finding interference. That's what I mean by... Both sides like one of the two answers. Neither likes them both. I don't know how to respond to you, because when I read the law, the law doesn't allow any type of discretionary aspect such as that. The law lays out a formula for the damages, and it says lost income. What other... You know, it's sort of a circular thing. If they didn't cause her loss of damages by terminating her, how could she possibly have caused her loss of income by what they did? I get lost in that. Maybe I'm not answering your question properly. Well, it's probably not a very clear question. Why don't you go proceed? Well, some of the other issues that were raised in this matter... The attorneys' fees is one of the issues that just pops into my mind at this point. That's another shell in the statute, insofar as the amount of attorneys' fees that were in contention here. Those attorneys' fees were actually significantly reduced. When Mr. Petrou presented his attorneys' fees, which were extensively documented, he reduced them because he did lose on the FLSA provision. The court further reduced those attorneys' fees, and it came out to something like a total of about 25%. The court also pointed out that Mr. Petrou's hourly fees were considerably less than most attorneys of his caliber and his experience. It was like $300 as opposed to the average of about $400. If you take that, that's a further reduction. You could use that to show like it's 50%. The bottom line is it was not that the judge just gave this number out. She did reduce it, and Mr. Petrou reduced it as well. Insofar as the instructions that you asked about earlier, the jury came in with a question about whether or not being terminated because she'd made the request. The court goes back and says, look at your instructions at the bottom of page 5 and the top of page 6, and that actually very explicitly addresses that. Of course, the jury did not come back with any further questions, so that must have been clarified. I see I'm close to the end. If I might, I'll go ahead and defer to Mr. Petrou. That will be fine. Thank you, Mr. Secretary. Thank you, Your Honor. All right, Mr. Petrou. Thank you, Your Honors. First, I'd just like to say they did not preserve many of the things that he spent his first five minutes on. He didn't make a request for a new trial. He didn't object to any of the findings of the jury. He didn't ask for a new trial in a timely way. He didn't file a motion for a directed verdict. The jury has made the decisions. The only question on appeal is the amount of damages. The judge asked us within 10 days to file a post-trial brief, if we had one, and we filed a post-trial brief basically citing cases that when there's uncontradicted evidence about the damages, then the court can award that uncontradicted evidence of damages. So we did that. We had a chart. We showed all the wages she lost. We subtracted all the interim wages she earned. Counsel asked no questions about that. He's trying to talk about a calendar now. That calendar had nothing to do with her lost wages. That was before she was fired. If he had cross-examined her on the witness stands, well, you didn't search for a job right away. Why did it take you 13 months? Why did you look around and not find a job and cause some questions about her damages and put on some evidence that she did not search for another job, did not perform due diligence, then perhaps that award of a dollar could have stood up. But there was absolutely nothing. And when the court said to counsel, I don't see any mitigations here, I'm not going to instruct a jury on mitigation, the counsel said, that's fine with me. So getting back to Judge Southwick, you asked, yes, it is a bit of a contradictory case. They did find that they interfered with her right to take FMLA. They also found that they acted in bad faith. I mean, to me, that's a pretty strong finding, that the company did something. The testimony was we had a lot of strong evidence that they knew that she was on FMLA when they fired her. We had a witness, Ms. Acevedo, who testified that she was there in front of a computer and she showed the manager who fired her that, look, she applied for FMLA. And after she applied for FMLA, she was instructed to write a letter firing her. So they knew that she had applied for FMLA. And we had strong evidence that there was no violation of any policy. She complied. She had to tell the manager that her manager, when she was ill, that she was applying for FMLA. She informed her. And then the company has a policy, which it's all one of our exhibits, that once you tell your manager, then the next step is you go to this reed group and you tell them. And she testified. She went to the reed group and they took all her paperwork and they told her you don't have to do anything anymore. And so we have strong evidence that they knew that she was on FMLA. They knew it and they fired her. That's why the jury found they interfered with her. I'm trying to explain to you, Your Honor. It was very strong evidence. So we believe that the jury had lots of evidence, but we're not here to decide that because they didn't preserve any of that on appeal. They didn't ask for a new trial down below. The question is about damages, and the Fifth Circuit has clearly held that if the damages are undisputed, why send it back? It's like granting a summary judgment. They presented no evidence to contradict her damages. All right, thank you, Mr. Petrucci. Mr. Robinson, you've saved time for rebuttal. Your Honor, the plaintiff is arguing this matter as though they won. The reality is the jury awarded $1 nominal damages. The jury's award was not a victory for the plaintiff here. And the court did a similar thing where they started looking for evidence to prove the damages should be awarded, but the jury didn't award any damages. The issue here is whether or not the jury had evidence not to award damages. And the jury had ample evidence, to make that finding. And that's the issue that we have. The counsel also mentioned that this is not a Seventh Amendment case. Your Honor, the judge's own order states that additory is unconstitutional if not done properly under the Seventh Amendment. I mean, that certainly applies. Also, the issue would be whether or not there's evidence for this jury to have awarded no damages. We have a jury instruction that requires causation, Your Honor. This is not a strict liability claim. It's just not. There is an abundant case law that says FMLA is not a strict liability claim for interference. If the jury could find some intervening cause for the termination, if the employer can put on some evidence that, in fact, it did not terminate her because she took FMLA, then the employer wins. Had we got the instruction that we had requested, I don't believe that there would have been a finding on interference for the plaintiff in this case. Fortunately, however, the jury did follow the damage instruction and picked up that issue and said, okay, even though we have to find interference based upon how this charge is written, we don't believe that the defendant was the cause of it. The reason why this plaintiff was terminated is because this plaintiff abandoned her job. The reason why this plaintiff was terminated was because she failed to follow the no-call, no-show policy. Counsel states that there was no evidence of the policy. We've cited to the testimony in our brief, Your Honor, the record where the plaintiff even speaks to it. We had a video presentation from the former HR manager for Service Air that also put on testimony regarding the policy. We had the plaintiff's supervisor testify as to what the policy was with respect to termination. While the district court judge did not accept it fully, apparently the jury had the ability to discern the policy. We provided a copy of the policy as an exhibit. It was presented to the jury. The jury has it. The policy, while just like many employers, it may not be the prettiest and most well-written policy, it clearly indicates that if you don't call in during the time where you're on leave of absence for FMLA or pending your approval, you can be terminated. And that's what happened here. I don't see any other basis. I don't think the award is not reconcilable, Your Honor. I believe that based upon what the jury had, even though they had a deficient instruction, the jury had enough to make the ruling as to damages that it made. And we keep going on about us not putting on anything about mitigation. Well, we weren't concerned about mitigation. We had no reason to say that she had not mitigated her damages. What we were looking at was service there, as the defendant employer in this case, did not cause the damages. Service there had appropriately terminated her. The amount of damages was not an issue for us. The fact that we didn't cause the damage was the entire issue that we presented in that court. And that is what the jury based that on. All right, so I don't see how you get on the attorney's fees issue. I know that's not what you've been addressing just now, but I don't know how you get around for our case. In other words, let's assume that we determine that the editor was inappropriate and that the damages are to be $1. The Farrar case says that where a jury awards nominal damages that attorney's fees in a substantial amount can still be awarded. Your Honor, and I'll quote from the Farrar case. The court said, when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all. I mean, that's what the court's overall opinion was in that case. Because of the $1 in damages, it affirmed the Fifth Circuit's finding of no attorney's fees. The court said, while the $1 in damages does not ultimately say for sure that the plaintiff did not prevail,  And the court said, $1 is a reasonable basis for saying you should not get any attorney's fees. And I think that's what the holding in Farrar is actually making. And I don't have anything else. All right. Thank you, Mr. Robinson. Your case and all of today's cases,